JACQAUS L. MARTIN, APPELLEE AND CROSS-APPELLANT, V. NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES ET AL., APPELLANTS AND CROSS-APPELLEES.

671 N.W.2d 613

Filed November 21, 2003. No. S-03-681.

Jon Bruning, Attorney General, and Linda L. Willard for appellants.

JacQaus L. Martin, pro se.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MILLER-LERMAN, JJ.

GERRARD, J.

## BACKGROUND

The plaintiff, JacQaus L. Martin, was committed to the custody of the Department of Correctional Services (DCS) on May 30, 1990, and is incarcerated at the Tecumseh State Correctional Institution (TSCI). Martin has been found guilty of misconduct at various disciplinary hearings and, as a result, has forfeited 32 months 15 days of good time. Of that time, forfeiture of 19 months 15 days was not personally approved by the chief executive officer of the TSCI. None of the forfeiture was personally approved by the Director of Correctional Services (Director).

Neb. Rev. Stat. § 83-1,107 (Reissue 1999) provides, in relevant part:

(2) The chief executive officer of a facility shall reduce the term of a committed offender by six months for each year of the offender's term and pro rata for any part thereof which is less than a year.

The total reductions shall be credited from the date of sentence, which shall include any term of confinement prior to sentence and commitment as provided pursuant to section 83-1,106, and shall be deducted from the maximum term, to determine the date when discharge from the custody of the state becomes mandatory.

(3) While the offender is in the custody of the department, reductions of terms granted pursuant to subsection (2) of this section may be forfeited, withheld, and restored *by the chief executive officer of the facility with the approval of the director* after the offender has been consulted regarding the charges of misconduct.

(Emphasis supplied.) We note that some of the statutes and regulations relevant to this appeal have been amended during Martin's incarceration. The parties have not presented any argument regarding these amendments, and we have determined that these changes do not affect our analysis of the instant appeal. Therefore, we will cite to the current statutory language for the sake of simplicity and convenience. See *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue*, 259 Neb. 24, 607 N.W.2d 857 (2000).

On December 27, 2002, Martin filed a "42 U.S.C.A. § 1983 Civil Complaint, Petition For Declaratory, Injunctive & Other Equitable Relief/Damages" against the DCS, Director Harold W. Clarke, and various wardens and former wardens of the TSCI and Nebraska State Penitentiary, purportedly in both their official capacities and their individual capacities. The petition, liberally construed, alleges that the defendants violated several of Martin's constitutional rights by failing to perform their duty to personally review disciplinary actions under § 83-1,107. Martin sought declaratory and injunctive relief restoring his forfeited good time. Martin also sought injunctive relief "ordering Plaintiff [sic] immediate release from custody, and freedom, along with bus ticket to any destination chosen." Finally, Martin sought, as relevant to this appeal, money damages totaling $25,000,000 as compensation for violations of his constitutional rights.

In an order dated March 3, 2003, the district court struck Martin's 42 U.S.C. § 1983 (2000) claims from his petition. The basis for striking the 42 U.S.C. § 1983 claims was, apparently, that the action was brought against the State and state officials acting in their official capacities, and was barred by sovereign immunity. See, e.g., *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999) (neither State nor its officials acting in their official capacities are "persons" under 42 U.S.C. § 1983).

In an order dated June 5, 2003, the district court concluded that Martin's good time had been improperly forfeited and should be restored to Martin. The court concluded, in relevant part, that

> while Neb. Rev. Stat. § 83-173 allows the [D]irector to delegate *appropriate powers* and *duties* to department heads, it is not an appropriate power to delegate the forfeiture, withholding, and restoration of good time to the Chief Executive Officers of the facilities, in contravention of Neb. Rev. Stat. § 83-1,107.

(Emphasis in original.) The court ordered that 32 months 15 days of Martin's good time be restored. The State timely appealed, Martin cross-appealed, and we moved the case to our docket pursuant to our authority to regulate the caseloads of the

appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

The State's amended brief assigns that the district court erred in finding that the Director could not delegate the authority to approve forfeiture of good time given to the Director in § 83-1,107(3). As developed by the arguments in the State's amended brief, (1) the State claims that the district court lacked jurisdiction over Martin's petition because (a) the State has sovereign immunity from declaratory judgments and Martin's petition fails to state a cause of action against the defendants in their individual capacities and (b) Martin is collaterally attacking his disciplinary action, and (2) the State claims that the Director's approval of forfeiture of good time is delegable.

On cross-appeal, Martin assigns that

the lower courts errored [sic] by not grantting [sic] the Plaintiff the monetary relief that he seeks, sought in the original petition,for [sic] the damages that the 5th, and 8th Amendments violations [sic] of his U.S., and State Of Nebraska Constitutional Rights, pursuant to Neb. Rev. Stat. [§] 25-1146, for the overtime served.

## STANDARD OF REVIEW

■ This appeal presents questions of law, regarding which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. See *Wood v. Wood*, 266 Neb. 580, 667 N.W.2d 235 (2003).

## ANALYSIS

### JURISDICTION

■ We first consider the State's jurisdictional argument. Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues presented by a case. *Dawes v. Wittrock Sandblasting & Painting*, 266 Neb. 526, 667 N.W.2d 167 (2003). The State argues that Martin's petition for declaratory judgment is barred by sovereign immunity. An action against a public officer to obtain relief from an invalid act or from an abuse of authority by the officer or agent is not a suit against the state and is not prohibited by sovereign immunity.

*State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 642 N.W.2d 132 (2002). However, suits which seek to compel an affirmative action on the part of state officials are barred by sovereign immunity. *Id.*

The facts of this case closely resemble those presented in *Perryman v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 66, 568 N.W.2d 241 (1997), *disapproved, Johnson v. Clarke*, 258 Neb. 316, 603 N.W.2d 373 (1999), in which an inmate brought a declaratory judgment action to determine whether DCS officials properly revoked his good time credit and to compel restitution of his good time credit. This court held that the inmate's action against the defendants was barred by sovereign immunity because he was seeking to compel an affirmative action on the part of the officials. See *id.* This court stated that the inmate's good time credit had already been taken away from him and that the inmate sought to compel immediate restitution of his good time credit. See *id.* The relief sought was affirmative and within the scope of sovereign immunity. See *id.* Therefore, the district court lacked subject matter jurisdiction. See *id.*

However, we overruled *Perryman* in *Johnson, supra.* In *Johnson*, an inmate brought a declaratory judgment action against officials of the DCS seeking declaratory relief regarding his rights under parole eligibility statutes and seeking restoration of his parole eligibility. We read the petition "as seeking a determination of whether defendants invalidly determined that he was not eligible for parole on the parole eligibility date he claims he was originally given." *Id.* at 320, 603 N.W.2d at 376. We held that the inmate sought to restrain the defendants from performing an invalid act, and we disapproved *Perryman, supra*, to the extent that it characterized such relief as affirmative. See *Johnson, supra.*

Relying in part upon *Johnson*, we also rejected the State's claim of sovereign immunity in *Lautenbaugh, supra.* In *Lautenbaugh*, the relators, a political candidate and an individual voter, brought an action against a county election commissioner seeking a writ of mandamus compelling the commissioner to restore the original district number to the adjusted territory of a school board election subdistrict. We concluded that the action was not, in reality, an action brought against the State or one of its

political subdivisions, because the action did not seek affirmative relief. See *id.* We noted that the basis for the relators' claims was that the election commissioner exceeded his statutory authority to adjust subdistrict boundaries, and the relators sought relief from what they alleged to be an invalid act or an abuse of authority by the election commissioner. See *id.* We stated that "[i]n this situation, the relief requested is affirmative only to the extent that it requests [the election commissioner's] actions be nullified if determined to be invalid." *State ex rel. Steinke v. Lautenbaugh*, 263 Neb. 652, 662, 642 N.W.2d 132, 140 (2002). Because the mandamus was brought only to remedy alleged unlawful acts of the official, the court did not lack subject matter jurisdiction due to sovereign immunity. See *id.*

Based on our recent decisions in *Johnson* and *Lautenbaugh*, we conclude that the district court did not lack jurisdiction in the present case. The basis for Martin's claim is that the defendants exceeded their statutory authority in forfeiting Martin's good time credits, and his petition essentially seeks a declaration that the defendants have executed that forfeiture invalidly. Compare, *Lautenbaugh, supra*; *Johnson v. Clarke*, 258 Neb. 316, 603 N.W.2d 373 (1999). The relief requested (at least, after dismissal of the 42 U.S.C. § 1983 claims) was affirmative only to the extent it requested that the defendants' actions be nullified if determined to be invalid. Compare *Lautenbaugh, supra*. Consequently, we conclude that the State's sovereign immunity argument is without merit, and the district court did not lack subject matter jurisdiction over Martin's petition.

 The State also argues, in what it claims is a jurisdictional defect, that the district court erred by permitting Martin to use a declaratory judgment action to collaterally attack disciplinary determinations that should have been directly appealed under the Administrative Procedure Act. See, e.g., *Billups v. Nebraska Dept. of Corr. Servs. Appeals Bd.*, 238 Neb. 39, 469 N.W.2d 120 (1991); *Moore v. Black*, 220 Neb. 122, 368 N.W.2d 488 (1985); *Dailey v. Nebraska Dept. of Corr. Servs.*, 6 Neb. App. 919, 578 N.W.2d 869 (1998). However, the rule against collateral attacks on prior judgments is based upon the doctrine of res judicata. See *Kirkland v. Abramson*, 248 Neb. 675, 538 N.W.2d 752 (1995)

(final judgment on merits of claim before administrative agency is res judicata and may not be relitigated). Cf. *Moore, supra.*

■ Res judicata is an affirmative defense which must ordinarily be pleaded to be available. *DeCosta Sporting Goods, Inc. v. Kirkland*, 210 Neb. 815, 316 N.W.2d 772 (1982). The State's answer to Martin's operative amended petition does not plead res judicata as a defense, nor does the record contain any indication that res judicata was raised as an issue by any filing in the district court. Compare *id.* While we may invoke the doctrine on our own motion, see *Abramson, supra*, we decline to do so in this case, and we do not consider the State's argument that Martin's petition is a collateral attack on a prior judgment.

### DELEGATION OF AUTHORITY

We next turn to the State's argument that the district court erred in concluding that § 83-1,107 requires the Director to personally approve forfeitures of good time and that this authority is nondelegable. We confronted a similar issue in *Fulmer v. Jensen*, 221 Neb. 582, 379 N.W.2d 736 (1986). In *Fulmer*, the plaintiff's motor vehicle operator's license was revoked by the Department of Motor Vehicles (DMV) after he was arrested for driving while intoxicated but refused to consent to a body fluid test. The statute then in effect, Neb. Rev. Stat. § 39-669.16 (Reissue 1984), provided in relevant part that

> [u]pon receipt of the officer's report of such refusal, the Director of Motor Vehicles shall notify such person of a date for hearing before him or her as to the reasonableness of the refusal to submit to the test. . . . After granting the person an opportunity to be heard on such issue, if it is not shown to the director that such refusal to submit to such chemical test was reasonable, the director shall summarily revoke the motor vehicle operator's license or nonresident operating privilege of such person for a period of one year from the date of such order. For the purpose of such hearing, the director may appoint an examiner who shall have such power to preside at such hearing, to administer oaths, examine witnesses and take testimony, and thereafter report the same to the director.

In *Fulmer, supra,* a hearing was held before a hearing officer, as provided by statute, and the hearing officer delivered a synopsis of the testimony to the deputy director of the DMV. The decision to revoke the plaintiff's license was made by the deputy director. See *id.* The plaintiff appealed the revocation to this court, arguing that the director of the DMV had illegally delegated her authority to determine whether the plaintiff's license should be revoked. See *id.*

■ We rejected the plaintiff's argument. We cited Neb. Rev. Stat. § 60-1503 (Reissue 1984), which provided that "[t]he Director of Motor Vehicles shall have authority to employ such personnel, including legal, and technical advisors as may be necessary to carry out the duties of his [or her] office." We noted the testimony of the director of the DMV that the DMV reviewed, at that time, up to 1,600 implied consent cases a year, making it impossible for her to personally review every case. See *Fulmer, supra.* We held that "[t]he authority to delegate discretionary and quasi-judicial powers to agency subordinates is implied where the powers bestowed upon an agency head 'are impossible of personal execution.'" *Id.* at 585, 379 N.W.2d at 739, quoting 2 Am. Jur. 2d *Administrative Law* § 223 (1962). We concluded that

> "[t]he law does not preclude practicable administrative procedure in obtaining the aid of assistants in the department, apparently to any extent *so long as the agency does not abdicate its power and responsibility and preserves for itself the right to make the final decision.*" The authority of the director to delegate her implied consent revocation duties is fairly implied by § 60-1503. We conclude that the appellee director did not unlawfully delegate her responsibilities under § 39-669.16.

(Emphasis supplied.) *Fulmer v. Jensen,* 221 Neb. 582, 585, 379 N.W.2d 736, 739 (1986), quoting 2 Am. Jur. 2d, *supra,* § 224. Accord *Koepp v. Jensen,* 230 Neb. 489, 432 N.W.2d 237 (1988).

The statutory provisions relevant to the instant case set forth the authority of the Director to delegate his duties even more explicitly than the statute upon which we relied in *Fulmer, supra.* Like the statute at issue in *Fulmer,* § 83-1,107 explicitly assigns the duty of reviewing forfeiture of good time to the Director. However, Neb. Rev. Stat. § 83-173(4) and (5) (Reissue

1999) specifically provides that the Director of the DCS shall "[a]ppoint and remove the chief executive officer of each [correctional] facility and *delegate appropriate powers and duties to him or her*" and "[a]ppoint and remove employees of the department and *delegate appropriate powers and duties to them.*" (Emphasis supplied.) Neb. Rev. Stat. § 83-177 (Reissue 1999) further provides, in relevant part, that

> [d]eputy or associate wardens or assistant superintendents in each facility shall advise and be responsible to the chief executive officer of the facility and *shall have such powers and duties as the chief executive officer delegates to them* in accordance with law or pursuant to the directions of the director.

(Emphasis supplied.) That authority has been exercised, as relevant to this appeal, by 68 Neb. Admin. Code, ch. 6, § 007 (2000), which provides that "[t]he disciplinary committees of each facility shall conduct hearings, render decisions, and impose appropriate penalties for violations of the Code of Offenses, with the review and approval of the Chief Executive Officer or designee." See, also, 68 Neb. Admin. Code, ch. 6, § 008 (2000) (committees may impose loss of good time).

The record also contains an affidavit, admitted without objection, in which the Director averred that, pursuant to § 007, he had delegated his duty to approve the forfeiture, withholding, and restoration of good time to the chief executive officers of DCS facilities. The Director averred that the DCS "held approximately 16,765 disciplinary hearings during 2002[,] any one of which could have resulted in loss of good time[,] and nearly 1700 of which during that time period did result in loss of good time." The Director explained that his position involved a large number of responsibilities and that it was "physically impossible for [him] to review each and every loss of good time by inmates and to perform the other duties of [his] office without delegating duties."

Based on the record before us and the relevant statutes, we conclude that the Director, and the chief executive officers of the TSCI, acted within their authority in delegating to subordinate officials the duty to approve the forfeiture of good time. It is only possible for an agency head to delegate duties that have

been conferred upon the delegator in the first instance. While § 83-1,107 provides that good time may be "forfeited . . . by the chief executive officer of the facility with the approval of the director," we do not read § 83-1,107 as excepting the duty to approve the forfeiture of good time from their authority to delegate duties, derived from the general principles of administrative law we explained in *Fulmer v. Jensen*, 221 Neb. 582, 379 N.W.2d 736 (1986), and expressly set forth in §§ 83-173 and 83-177. In other words, the Department, by setting up a practical system of determining the forfeiture (or nonforfeiture) of good time with due process fully preserved, has in no way abdicated its power and responsibility, and in fact " 'preserve[d] for itself the right to make the final decision.' " See *Fulmer*, 221 Neb. at 585, 379 N.W.2d at 739. Consequently, we conclude that the State's assignment of error has merit, and the judgment of the district court must be reversed.

Martin argues, on cross-appeal, that he was entitled to a number of additional remedies that the district court failed to award, including monetary damages. However, as best we can determine, all of Martin's arguments are premised on the underlying statutory argument that we rejected above. Therefore, based on our analysis of the State's assignment of error, we also conclude that Martin's cross-appeal is without merit.

## CONCLUSION

The district court erred in concluding that the Director's duty to approve the forfeiture of good time was nondelegable. The judgment of the district court is reversed, and the cause is remanded with directions to dismiss Martin's petition in its entirety.

REVERSED AND REMANDED WITH DIRECTIONS.

McCORMACK, J., not participating.

STEPHAN, J., dissenting.

Neb. Rev. Stat. § 83-1,107(3) (Reissue 1999) authorizes certain actions to be taken with respect to an offender's "good time" if the offender is guilty of misconduct while in the custody of the Department of Correctional Services. The statute provides that good time may be "forfeited, withheld, and restored *by the chief executive officer of the facility with the approval of the director* after the offender has been consulted regarding the charges of

misconduct." (Emphasis supplied.) From the plain language of the statute, I understand this is to be a two-step procedure, with each step occurring at a different level of the administrative structure. The initial decision to take away an offender's good time is to be made at the facility level by the chief executive of the facility. That decision must then be approved at the departmental level by the Director of Correctional Services (Director).

I agree with the general principle that under *Fulmer v. Jensen,* 221 Neb. 582, 379 N.W.2d 736 (1986), and applicable statutory authority, certain administrative powers may be lawfully delegated to subordinates. I do not question the delegation of the chief executive officer's responsibility under § 83-1,107 to the disciplinary committee at the facility under 68 Neb. Admin. Code, ch. 6, §§ 005, 007, and 008 (2000). That delegation involves the first step of the good time forfeiture process, i.e., the initial determination that good time should be forfeited. In my view, as long as this determination is made at the facility level, it does not matter whether it is made personally by the chief executive officer or by the disciplinary committee of that facility pursuant to a delegation of authority.

However, the second step of the process is problematic in this case. Under § 83-1,107(3), the Director must approve a forfeiture of good time that has been determined at the facility level. I agree that the Director could not be expected to review each case personally and that thus delegation *to someone* is permissible under *Fulmer.* Moreover, as the majority correctly notes, the Director has specific authority to delegate statutory responsibility to subordinates. But such authority is not carte blanche. Under Neb. Rev. Stat. § 83-173(4) (Reissue 1999), the Director may delegate "appropriate powers and duties" to the chief executive officer of each facility. A separate subsection of that statute, § 83-173(5), authorizes the Director to delegate "appropriate powers and duties" to "employees of the department." The fact that the statute makes a distinction between delegation of authority to chief executive officers of correctional facilities and delegation to other department employees indicates that some powers and duties of the director may be appropriately delegated to a chief executive officer under § 83-173(4), while others may not and

must be delegated, if at all, to some other departmental employee pursuant to § 83-173(5).

I agree with the district court that the Director's power to approve a forfeiture of good time is not an appropriate power for delegation to the chief executive officer of the facility where the prisoner is in custody. Such a delegation would alter the statutory scheme of determination of forfeiture at the facility level subject to approval at the departmental level by placing the entire process at the facility level. In effect, the chief executive officer would be given authority to approve his or her own actions. An administrative agency may not employ its rulemaking power to modify, alter, or enlarge provisions of a statute which it is charged with administering. *City of Omaha v. Kum & Go*, 263 Neb. 724, 642 N.W.2d 154 (2002); *Spencer v. Omaha Pub. Sch. Dist.*, 252 Neb. 750, 566 N.W.2d 757 (1997). It logically follows that administrative officers may not delegate their statutory powers and duties to subordinates in such a manner as to modify a specific statutory procedure.

In my opinion, the judgment of the district court is correct and should be affirmed. I therefore respectfully dissent.

CONNOLLY, J., joins in this dissent.